FRED ENDRESS, PROSECUTOR, v. MAYOR, &c., OF THE
CITY OF PLAINFIELD, DEFENDANT.

Submitted July 3, 1915—Decided November 3, 1915.

Section 41 of the amended charter of Plainfield (*Pamph. L., pp.* 1134,
1150) provides, in the case of certain street improvements, that
the report of the commissioners of assessment shall be advertised
after being filed in the city clerk's office and ten days before
action thereon by the council; and that if council recommit
the report to the commissioners, the latter shall in such event,
"as far as may be necessary, comply with all the requirements
of this section." *Held*, that the charter requires the same notice
to be given of the filing of a report after recommitment as is
required in the first instance.

On *certiorari*.

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutor, *George V. W. Moy.*

For the defendant, *Charles A. Reed.*

The opinion of the court was delivered by

PARKER, J.    The writ brings up an ordinance of the city
of Plainfield for the widening of Madison avenue, and the
proceedings subsequent thereto resulting in an assessment of
benefits on property owners for part of the cost, and an im-
position of the remainder on the city at large.

The orderly procedure in such cases is prescribed by sec-
tions 39 to 41 inclusive, of the charter of Plainfield. *Pamph.
L.* 1872, *pp.* 1148 *et seq.*  There is to be an ordinance passed
by the council; a written or printed notice to the owners
of lands required, of the intention of council to take them;
the council "shall treat with" the owners for the same; if
the owners shall refuse to treat for such land, or council
cannot agree with them, three commissioners are to be ap-
pointed to make an estimate of the damages that such owners

will sustain by the making of the improvements, and also the benefits conferred, and the damages and benefits are to be set off against each other. Then follow provisions for remonstrance by abutting owners which are not now in question; and in section 40, other provisions for the oath of the commissioners and their removal in certain cases. By section 41, the council is to fix and advertise the time and place of the meeting of the commissioners, describing the improvement; the commissioners shall examine into the matter and report to the council, "sufficiently in detail to enable the common council to determine the principle upon which such estimates and assessments were made." The report shall be open to inspection at the city clerk's office for ten days before presentation to the council, and advertised at least that time before such presentation; parties interested may file objections with the city clerk, and the commissioners may then reconsider and change the report, but if they refuse so to do either in whole or part, they shall deliver the report with the objections to the council, and that body may then do one of three things—*first,* it may ratify the report; or *second,* may alter the report "in respect to the matter specified in the objections;" or *third,* may "recommit the report to the commissioners for further consideration in respect to such matters, or any other matter connected therewith;" and then follows this important clause: "And in the event of a recommitment, the commissioners shall, as far as may be necessary, comply with all the requirements of this section."

By a proviso, any person conceiving himself aggrieved by the proceedings of the council may appeal within sixty days to the Circuit Court; but must notify the city clerk of such intended appeal within ten days after ratification of the report.

We have gone over the various steps in the proceeding leading up to the assessment attacked, and find no illegality in the original ordinance, the resolution fixing a time and place for treating with owners of lands to be taken, or the advertisement of said time, place and object. Prosecutor claims

that at the council meeting pursuant to the resolution and notice, there was no attempt to treat. It does appear that some seven properties were represented; that only one representative made a definite proposition, which apparently was not acceptable to the council. It may be that council should have made some proposition of its own. We do not pass on the question whether it was a sufficient compliance with the charter to make announcement at the meeting that the council was prepared to treat with owners, and wait for the owners to make propositions; for prosecutor does not seem to have a status to raise this question. He knew of the meeting but did not appear, was not represented, and submitted no offer for his lands. We do not recall any case of an attack of this kind by any but an owner with reference to the condemnation of his own property. This was the situation in the recent case of *Beechwood Park Land Co.* v. *Summit,* 78 *N. J. L.* 182, and the much earlier one of *Boice* v. *Plainfield,* 41 *Id.* 138, both of which related to assessments for street improvement, and the Boice case related to a widening under the very sections of the charter now in question. There seems reason for holding that prosecutor should not be heard on the alleged failure to treat with other owners; first, because the proceeding at this stage was not an assessment, but an exercise of eminent domain, and if the other owners make no objection to an appraisement of their property by the commissioners, they manifestly submit to their jurisdiction and in this way assent to and ratify a declaration by council that they refuse to treat.

But if prosecutor had any right to raise such a question, he raises it too late. The meeting in question was in March, and prosecutor with actual or constructive knowledge thereof, waited until the report of the commission was finally confirmed in December, and a month more, before invoking this writ. We think that he should have acted promptly, as was done in *Beechwood Park Land Co.* v. *Summit, supra,* and not have waited until the completion of a tedious proceeding.

We pass to the other steps in the procedure. The appointment of commissioners, notice of their meeting, and

their original report and notice thereof, were all regular in form. The difficulty in the case arises with respect to the action of the council on the report, and the subsequent proceedings of the council and commissioners.

When the report came in, on December 7th, several objections were made, and particularly one in writing by the Dreier estate, specifying, among other things, that the award to that estate for land taken was inadequate. This was referred to the street committee; and council adjourned over until December 21st and again to December 30th. The street committee on that date reported back the objections, "together with the report of the commissioners; the said commissioners having since the reference to said committee, reconsidered said report, considered said objections and changed said report in view thereof in respect to award of damages to estate of Samuel Dreier and having refused to change the same in respect to verbal objections made by any others; and the committee recommend that said report as so reconsidered and changed be ratified and confirmed by the common council." The council thereupon considered and adopted the amended report, the substantial amendment being to raise the award to the Dreier estate some $1,500, which excess was necessarily included in the surplus of cost of improvement over assessments, which surplus has to be paid by the city at large because the original assessments remained unaltered. Prosecutor as a taxpayer was interested in the amount of this surplus and has therefore a status to question any substantial irregularity in the proceedings whereby it was created; so that if the increase of $1,500 was irregularly made, it should be set aside. As to this feature of the case, prosecutor is not in laches.

We consider that the steps taken after the report was first presented were not in accordance with the charter. It is not entirely clear whether the commissioners reconsidered their report independently of council action, as they were entitled to do under the charter, or whether the report was recommitted to them. There is no mention in the minutes of such recommitment; on the contrary the report was re-

ferred to the committee on streets. Such a reference was clearly irregular. On the other hand, if the commissioners were to reconsider their report of their own motion, such consideration should necessarily be before and not after the presentation to the council, for it is plain that what parties interested were to understand should be considered by the council was the report with any amendments made in view of objections. This was not done, so we need not decide whether further advertisement of consideration by the council of a report amended after filing and before original presentation is called for. Assuming what is most favorable for the city, that the report was duly referred back to the commissioners, then the provision applies, that "in the event of a recommitment, the commissioners shall, as far as may be necessary, comply with all the requirements of this section." Manifestly, as we view it, the intent is that parties shall have the same notice of, and opportunity to object to, the amended report, that they had respecting the original report; which in its turn implies further publication of the time of consideration of the same by the council. Otherwise there is no telling what drastic changes might be made and adopted with the public left in ignorance thereof and without opportunity to be heard thereon.

These considerations lead us to the conclusion that the proceedings of the council taken after the first presentation of the report on December 7th, 1914, should be set aside, to the end that council proceed thereon according to law, and if recommitted to the commissioners, that due notice of its further submission to the council be given. The prosecutor is entitled to costs.